Hitchcock, J.,
delivered the opinion of the court:
The facts of this case, so far as it is necessary to state the same for the purpose of understanding the points decided, are as follows : On December 4, 1824, Calvin Luzen, father of the complainants, being indebted to one Sheldon Chapin, of Buffalo, in the State of New York, in the sum of eighty dollars, to secure payment, executed to Chapin a mortgage upon lot No. 88, in the town of Lower Sandusky. Before payment was made, Calvin Luzen died, leaving the complainants his heirs at law, and the defendant, Clarinda Luzen, his widow, and *Samuel Treat was appointed his administrator. On November 4, 1829, Chapin commenced a proceeding by scire facias in the court of common pleas of Sandusky county, to subject the mortgaged premises to sale, in order to satisfy his debt. In this case, Treat, administrator of Luzen, was sole defendant. In due course of time, judgment was rendered in this case, and the mortgaged premises sold at sheriff’s sale to Joseph Loveland; the proceedings in the sale were approved by the court, and a deed executed on May 19, 1832.
In December, 1831, the taxes upon said lot being in arrear, the same was sold at tax sale to Henry Loveland, one of the defendants, and pursuant to this sale a deed was executed to him by the auditor of the county, on the 15th day of the same month of December.
Joseph Loveland died in 1834, leaving the defendants, Mary Loveland, and Henry Loveland, together with one Aaron Love-land, his children and heirs at law. On the 10th of February, after the death of their father, Henry and Aaron Loveland conveyed all their interest in the lot number 88 to the defendant Mary, since which time she has been in possession, receiving the rents and profits.
The prayer of the bill is, that the complainants may be let in to redeem the land from the effect of the mortgage, and also of the tax sale, and for general relief.
So far as respects the sale for taxes, although we are not prepared to say there is no case in which a court of chancery can interfere, yet, in a case like the present, the law has made ample provision for the redemption of land so sold. And where there is specific re *43 lief jxrovided by statute, it would be extraordinary for a court of chancery to interfere and grant similar relief. Its jurisdiction extends only to cases where there is not complete and adequate remedy at law; not to cases where the legal remedy is plain, adequate, specific, and complete. On this ground, then, if there were no other difficulties in the way of the complainants, this bill must be dismissed. For, from aught that appears in the case, the defendant, Mary Loveland, has a perfect legal title to the premises in controversy, in virtue of the tax sale in 1831.
But how is it with respect to the mortgage? The complainants wish to redeem, but they have not made the original mortgagee a party to the suit, nor have they brought any money into court. These defendants are not the assignees of Chapin, the *mortgageo. They do not claim in his rights, but they claim as purchasers at sheriff’s sale.. In such case under our law, the purchaser acquires not the right or interest of the judgment creditor, but of the judgment debtor. If', as is contended by the plaintiffs, they were no parties to the judgment in scire facias, if their rights were not concluded thereby, then their title to the lands in controversy remains good as-to all the world, except as to the mortgagee, and they would, under the circumstances of this case, have plain and adequate remedy at law by action of ejectment.
But to decide the case upon this ground would not settle the controversy between these parties.
This controversy grows out of the question whether the complainants, the heirs of Luzon, are, by the proceedings in scire facias, divested of the equity of redemption, or of their interest in this lot of land, they not having been parties to the record. This is the question which has been argued by counsel, and although it would more properly have arisen in an action of ejectment for the recovery of the possession of the land, still we think it advisable to dispose of it in the present case.
As a general rule, none but parties and privies are bound by a judgment. And upon ordinary judgments against personal representatives, the lands of decedents can not be seized in execution, Still there can be no doubt that it would be competent for the legislature to change this rule of law, and probably there would be no great inconvenience resulting from such change, except that it might in some cases interfere with our most equitable rule respecting the distribution of a deceased person’s estate among his *44 creditors. It is supposed by the counsel for the defendants, that by the act of January 2, 1810, “providing for the recovery of money secured by mortgage,” this rule was so far changed, that when under the provisions of that statute a judgment was recovered against the personal representative of a mortgagor, the mortgaged premises might be seized and sold on execution. 1 Chase’s Stat. 645. This statute is now repealed, and it is to be hoped that the proceedings which have been had under it will not be lightly interfered with. If it were a new act, one under which there had been but little practice, and were it now for the first time submitted to the court for construction, probably we should not entirely concur with the counsel for the defendant in his argument. The first section provides that if the conditions of the mortgage are not complied with, the mortgagee, *his heirs, executors, administrators, or assigns may “sue out a writ of scire facias against the mortgagor, or mortgagors, or his, her, or their heirs, executors, or administrators,” etc. Generally where a suit is authorized by statute to be commenced against the “ heirs, executors, or administrators,” of a deceased person, we should conclude that the suit must be brought against oné or the other, according to the nature of the particular cause of action. If it was one in which the heirs were bound, or had a peculiar interest, the suit should be brought against them, otherwise against the executor or administrator. If, however, we were to adopt this principle in the construction of this statute, no difficulty would be removed. The debt secured by a mortgage may be a mere simple contract debt, in which the heirs have no peculiar interest, although they have an interest in the security given for that debt.
By the second section of the act, it is provided that after judgment, the plaintiff might have an execution of levari facias, in virtue of which the mortgaged premises might be levied upon and sold, “under the same regulation that lands and tenements are or may be by law disposed of, for the satisfaction of judgments.” But upon this judgment, although the mortgaged promises were entirely insufficient to satisfy the debt, no other property could be seized in execution, and so far the proceedings are in the nature of proceedings in rem. But in the third section of the act it is provided, “thatif the'mortgaged premises so taken in execution be not sufficient to satisfy said judgment, then the residue of said judgment so remaining unsatisfied, shall be deemed and taken to *45 be a debt of record, for which the plaintiff or plaintiffs may issue a writ or writs of scire facias, and proceed therein to judgment and. execution, as in other cases.” The object of the statute was to give a summary remedy to the mortgagee, by enabling him in one action to recover or liquidate his debt, and to subject the landed security to the satisfaction of it. If the suit was against the representatives of the mortgagee, so far as the liquidation of the debt is concerned, it would seem to bo proper that the personal representatives should be parties; so far as the lands were to. be affected, it would be equally proper that the real representatives, the heirs, should be parties. Still the statute is in the alternative. The mortgagee is authorized to “ sue out a writ of scire facias against the said mortgagor or mortgagors, or his, her, or their heirs, executors, or administrators.”
There can be no doubt that under this act the mortgagee might ^prosecute his scire facias against the personal representative of his mortgagor. He is expressly authorized to do it. He has done it in this case. What would be the consequence, to hold with the counsel for the plaintiffs, that upon the judgment rendered, no execution issued could be levied on the land mortgaged? It would bo to decide that the mortgaged premises were in effect released from liability for the debt. For it has been holden that a judgment upon the scire facias extinguishes the bond, bill, note, or other evidence of the original debt. 1 Ohio, 158.
Will it be said that, notwithstanding this judgment, the mortgagor may resort to a court of chancery and foreclose the mortgage? It was for a long time matter of doubt during the existence of the scire facias law, whether a bill for foreclosure could be sustained. The court were very much divided upon the subject, and this division of opinion continued until the decision of the anonymous case, reported in 1 Ohio, 253. It must be recollected, however, that this scire facias law under which this suit was prosecuted, although enacted in 1810, contained no new principle, then for the first time introduced into our system. It was merely a compilation or continuation of former enactments. The principle was first introduced in 1795, in a law adopted by the governor and judges of the territory from the statutes of Pennsylvania. At that time there could be no bill of foreclosure, for there was no court of chancery, or court having chancery jurisdiction in the territory. 1 Chase’s Stab 138. By the ordinance for the govern *46 ment of the territory, of July 13, 1787, the jurisdiction of the court, therein provided for, was limited to a common law jurisdiction. 1 Chase’s Stat. 67. And it is believed that there was no court within the territory possessing chancery jurisdiction until after the adoption of the state constitution. In seeking for the meaning and intention of the legislature, we must bear it in mind that there was no way by which a mortgagee could, at the time the principle was introduced, directly subject mortgaged premises to sale in satisfaction of his debt. He might have his action of ejectment, and recover the property, but the equity of redemption would still remain. He might have his action for the recovery of the debt itself, and subject the land to sale as in other cases; but by this course of proceeding he might be in danger of losing his lion, for he would be in no better situation than other judgment creditors. But by scire facias he might directly subject the land to sale, and when sold, the purchaser would take it, discharged of the equity of redemption. Had *there been a court exercising chancery jurisdiction, it is believed that this law would never have been adopted; but, being adopted, it was continued in force long after our courts had chancery jurisdiction, long after the reason which led to its adoption had ceased.
Taking all these circumstances into consideration, in connection with the terms of the law itself, it seems to me to be at least extremely doubtful, whether, were we now, for the first time, called upon to give a construction to it so far as the particular question raised in this ease is concerned, we could say that these defendants had no title, or that the equity of redemption was not foreclosed. But it must be remembered that this law, introduced at an early period, is no longer a part of our system; it has been repealed; and it is our duty to seek rather for the construction given it by the courts of former days than to give it a construction of our own. It is the contemporaneous construction that must govern. And we believe this to have been that construction, that where a scire facias was sued out after the death of the mortgagee, it might be sued out, according to the words of the act, against either the executor or administrator, or against the heir, according to circumstances. If there was a personal representative, the suit must be commenced against him ; if not, then against the real representative. Such was the practice under the act, and it would be followed by fearful consequences to hold it to be wrong.
*47 Such being oui' opinion, we hold that by the sheriff’s sale these complainants were divested of all interest in the premises. The equity of redemption must be foreclosed.
The bill must therefore be dismissed, with costs.