-Read;, J.
dissenting. I cannot concur in the opinion just pronounced.
The material facts appear to. me to.be briefly as follows: John .Mercer, on the 10th of June, 1796, mortgaged to Jesse A. Hunt, a fractional lot, 201, in Cincinnati, outlot'29, a fractional part of an outlot adjoining, and, .also, outlot- 28, to secure the payment .Of $720, with interest,, on or before the 10th. of September, then néxt. .
On the 10th of. February, 1798, John Mercer executed'another deed, to-the same parties, purporting'to be a mortgage-of fractional inlot .409, outlot 29, the fractional lot adjoining the same; also, outlot'28; also, a military-warrant, to secure the *759 payment of $320, with interest, on or before the 13th February then next. The instrument was not acknowledged, and was attested by one witness only.
John Mercer died in 1806, leaving an only daughter, (the lessee of the plaintiff,) his heir at law. She married John Heighway in 1812, and he died in 1828.
In the year 1808, the mortgagees caused two writs of scire facias, on the mortgages, to be issued against Susan Mercer, the widow and administratrix of John Mercer. The writ on the so called mortgage of 1798 is without a seal.
Two judgments were rendered by default, not adjudging the mortgaged lands to be levied upon and sold, but adjudging the defendant to pay the respective sums of $1,232.58, and $473. Writs of execution were issued, commanding the sheriff to levy upon all the lands and goods which belonged to John Mercer.
The sheriff accordingly levied under the judgment for $1,-232.58, part of the property included in the first mortgage, namely, inlot 201 and outlot 28, and sold the same for $400. Under the other judgment, for $473, the sheriff returned that he had levied on inlot 409, on number 29, on a fractional out-lot, and on outlot number 8, and had sold the same for $200. The returns are merely “made $400,” “made $200.” No. 8 was not mortgaged.
A .conveyance was made by the sheriff to Jesse Hunt, dated 5th November, 1811, which was set up as a conveyance under the judgments, executions, and sales above mentioned. It recites a judgment rendered by the Court of Common Pleas of Hamilton county, in December term, 1810 — not the two judgments rendered in April term, 1808. It was not acknowledged in open court, and the attestation was not thus, “ sealed and delivered in presence of.”
Sometime after this deed had been executed, a dispute arose between Jesse Hunt and Susan Mercer, the latter insisting the purchase had been made for her benefit by Jesse Hunt, as her trustee. Mrs. Mercer retained possession with her daughter *760 until the year 1815, when the dispute was compromised by Jesse Hunt’.s taking part of the property, and the widow Mercer the remainder. The lessor'of the plaintiff joined with her husband and mother in a conveyance .to Jesse Hunt of the property now sought to be recovered, .but the lessor of the plaintiff was not separately examined as a married woman; and she denies that the compromise was-binding upon her, and insists that the proceedings against her mother are of no effect.
In 18,18, a bill -was. filed’by Mrs. Mercer, and Miv Heighway' and his wife, to be relieved from the deed of 1815, on the ground that it had'< hot been drawn up according to the compromise ; and that Jesse Hunt had violated, the compromise by setting up claims to the mortgage money, which had been re-leaded on the compromise. ‘ Relief from the sheriff’s deed was also prayed, on the ground of fraud; b.ut as the bill was dismissed, at defiéndant’s costs, without any reason being assigned for such dismissal, it is apparent that the attack upon the deed of 1815 failed, and consequently the other matters charged in the bill could not have-been litigated. The deed-of 1815 was binding on the complainants in that suit. In 1823 the judgments were received-like ordinary judgments, for the purpose.of obtaining common executions for the collection of thp balance claimed to be due. , The administratrix put in pleas in those proceedings. The administratrix having claims upon the estate, applied to the Probate Court for an order to sell land, namely, outlot 36, to pay debts. Jesse Hunt'filed a bill in chancery, in 1824-, to enjoin this/sale, and claiming á ^balance to be due to him upon, the mortgages. ’ To this bill Susan Mercer; answered,' under oath, that some time after her husband’s death, Jesse Hunt advised her to. have the mortgaged property sold under execution, and promised toi attend the sale as her agent, and bid off .the property for hef; that after the sale, she made payment on the mortgages and paid the taxes. The particulars óf the compromise are also set fortín In’ 1830, the bill, was dismissed with costs, the balance claimed by Jesse Hunt having been settled by the’,conveyance .of a piece of property to N. G. Pendleton.
*761 Upon the settlement, in 1827, Jesse Hunt executed a deed of release of the estate of John Mercer “ from any further ‘ liability for or on account of any existing claims, &c.”
In 1820, Jesse Hunt conveyed the property in- question to his son, George N. Hunt, under whom the defendants claim as devisees. The property has been improved, and the lessor of the plaintiff set up no claim to it after the death of her husband, but has spoken of it as belonging to the defendants, and has so described it in transactions with third persons; and she assumed the absolute ownership of that part of the mortgaged property which Jesse Hunt conveyed to Susan Mercer in 1815.
Two principal propositions are made by counsel on behalf of the defendants: 1st. That the scire facias proceedings against Susan Mercer are sufficient to divest the title of her daughter; and 2d. That the mortgages constitute a sufficient defence to this action. Various other defences are set up, which I will dispose of before considering the great questions referred to.
The statute of limitations is relied upon; and it is also said the lessor of the plaintiff is estopped from claiming the property by her acquiescence in what was done during her coverture, and by her not disturbing the possession of the defendants fon many years.
Plaintiff’s right of action accrued on the death of her husband. Up to that time, the possession of the defendant’s ancestor was lawfully held under the deed of 1815, which passed, an estate for the joint lives of John Heighway and Ms. wife.
As to the alledged estoppel in pais, it is not pretended that the plaintiff has concealed any facts from the knowledge of' the defendants. They cannot acquire any title by reason of her ignorance of her rights, or by her failure to prosecute her action at an earlier period. What was dono by her mother,- and husband did not bind her.
It is also contended by defendants, that plaintiff is. estopped, by a decree in chancery rendered during her coverture, whereby the bill filed by her mother and husband, charging fraud in. *762 tlle procurement of the compromise deed of 1815, was dismissed. Other matters are charged in the bill, but as the complainants were bound by the. deed of 1815, not having succeeded in their attack upon it, such other matters could not be gone into. This decree is no estoppel.
It is also contended, that circumstances may amount to a redelivery of a deed, and it is assumed that a void deed, executed by a married woman, will pass the legal title if she, after the coverture has ceased, redelivers the deed. That may be so in England, where the mere delivery of a deed conveying land is sufficient to pass the title, although there be no signature, attesting witnesses or acknowledgment. But it is not so in this State.
I am of opinion, that on the decease of John Mercer, his estate descended to the plaintiff, under the statute of descents of 1805 ; Chase’s Stat. 515. It did not become vested in the administratrix either at common law or by any statute of this State. An administrator does not take any estate whatever, either of a- legal or equitable nature. Such an estate is altogether dissimilar from a chattel interest.
The administratrix could not convey this estate, and she did not profess to do so as administratrix, when she executed the deed of 1815.
The proceedings had against the administratrix do not, in my opinion, divest the title of the daughter. The judgments and executions are founded upon the erroneous supposition that all the lands and other property of the decedent could be levied upon and sold under and by virtue of judgments against the administratrix. Under such an erroneous opinion, a general judgment against the administratrix and a general execution would be preferred to a judgment upon proceedings against the heir, subjecting- only the mortgaged lands to levy and sale. Hence, in the present case, common judgments were obtained against the administratrix, followed by ordinary executions against all the property, real and personal, and a sheriff’s deed ¡under the law regulating common judgments and executions. *763 This Court has decided such proceedings to be void, so far as the lands of the decedent are concerned; Lessee of Grey v. Askew, 3 Ohio Rep. 484. In consequence of that decision, the proceedings are, by a mere afterthought, claimed to be under the law of 1795. The executions were respectively levied upon parts of the mortgaged lands, and sold, in each case, for part of the debt, as upon common judgments and executions for debt, without any regard to the mortgages. And the judgments were revived as common judgments and executions for debt, without any regard to the mortgages, for the purposes of recovering the balance of the debt, unsatisfied by the sales. Jesse and A. Hunt preferred ordinary judgments in debt with general executions, and it will not do now to produce these proceedings as special judgments and executions under the law of 1795.
The law of 1795, adopted by the governor and judges, (Chase’s Stat. 138,) authorizes a writ of scire facias to be issued against “ the mortgagors and mortgagees, his, her or their heirs, executors and administrators.” Judgment was to be rendered condemning the mortgaged property to be sold, and nothing more; the judgment was not available for the recovery of the unsatisfied balance. The sheriff was. to convey the property to the purchaser by deed, “acknowledged in open Court.” The design of the last provision was to secure the previous examination of the proceedings and the confirmation or disallowance of the sale. Roads v. Symmes, 1 Ohio Rep. 315.
The law of 1795 authorized the proceedings on scire facias to be had upon mortgages executed before as well as after the adoption of the law. An act passed by the Territorial Legislature of 1802, (Chase’s Stat. 346,) authorized the writ of scire facias on mortgages, and the sheriff was to make a deed in the ordinary manner. If the mortgaged premises were not sufficient to satisfy the debt, the remainder was to be a debt of record, upon which the plaintiff might issue a scire facias and proceed to judgment and execution as in other cases.
*764 This act was repealed by the act of 1805, (Chase’s Stat. 496,) which confines scire facias proceedings on mortgages to those executed after its passage.
Another act, passed in 1805, (Chase’s Stat. 517,) repealed the law of 1795 ; and when the estate descended to the lessor of plaintiff, in 1806, no summary proceedings by scire facias could be resorted to for the recovery of the mortgage money. But in January, 1807, an act was passed, (Chase’s Stat. 559,) enacting that all money secured by mortgage executed prior to the act of 1805, “ be and the same is hereby made recoverable f in the same manner that money secured by mortgage was made c recoverable by the law in force at the time such mortgage was c executed.”
It is argued by the counsel for the defendants, that under these laws it was unnecessary for the owner of the mortgaged property to have his day in court, and that the true meaning of the act of 1807 is, that the judgment might be obtained under the law of 1795, and the subsequent proceedings had under the general execution law, which authorizes the sale of all the property of the defendant, &c., on action, real or personal, and a conveyance by the sheriff, without a previous examination of his proceedings.
On the contrary, it appears to me that no other execution could be issued upon a judgment under the law of 1795, than an execution upon the mortgaged property; and that the only authority conferred upon the sheriff was, by virtue of that law, revived for the purpose by the act of 1807. It is absurd to suppose that a special judgment, had under the act of 1795, condemning the mortgaged land, would authorize a general execution against all the property of the decedent. The general execution law was inapplicable for another reason ; it did not authorize a levy upon the lands of the decedent, but only upon the lands “ of the defendantand the only defendant was the administratrix. This point is settled by the decision of this Court in Lessee of Grey v. Askew, 3 Ohio Rep. 484.
*765 The Legislature intended to require the mortgaged lands to be sold and conveyed, according to the law in force when the mortgage was executed. It was not intended to apply subsequent execution laws, which forbid a sale except at two-thirds of the appraised value. The Legislature intended to avoid that retroactive legislation, which has recently been condemned by the Supreme Court in Bronson v. McKenzie, 1 Howard Rep. 311. The policy of our statute law, on this subject, is •explained in Lessee of Allen v. Parish, 3 Ohio Rep. 189.
As the judgment, levy, and sale, authorized by the act of 1807, must have been in accordance with the law in force when the mortgage was executed, it follows that the sale must have been perfected as required by that law, and the proceedings under it must have been examined and confirmed by the Court, as directed by its positive provisions. In other words, the deed must have been acknowledged in Court. I am therefore of opinion, that the judgments, executions, and sales, and the sheriff’s deed, were inoperative in the present case.
Other objections are urged by plaintiff’s counsel to sheriff’s deed, on which it is unnecessary to give an opinion.
I hold the first objection taken to the judicial proceedings to be fatal. The owner of the property had no day in Court. She would have been entitled to that right in proceedings had under the law of 1795, and no other proceedings could be of any avail. It is said that this Court has decided otherwise in Biggerstoff v. Loveland, 8 Ohio Rep. 44. I do not so understand that case. It was under the act of 1810, (Chase’s Stat. 645,) and it was founded expressly upon the peculiar provisions of that act, provisions which are not to be found in the law of 1795. The Court say, page 45, “ as a general rule, ‘ none but parties and privies are bound by a judgment; and ‘ upon ordinary judgments against personal representatives, the 5 lands of decedents cannot be seized in execution. Still 1here { can be no doubt that it would be competent for the Legisla- ‘ ture to change the rule of law.” The rule of law could not be changed by retrospective legislation. Now, the act of 1810 is prospective only; it is confined to mortgages executed after *766 its passage. But the law of 1795 applied to mortgages made before as well as after its adoption; and I feel constrained to put such a construction upon the law as will prevent it from assuming to authorize the taking away of an estate which had become vested before its adoption, by so called judicial proceedings against a third person, not the owner.
Indeed, the meaning of the law is plain and obvious. It required the Court to go against either the heir, or the personal representative of the mortgagor, according to the nature of the estate. Thus, if the land was freehold, the fundamental rule of law and justice was to be complied with, the owner (the heir,) was to have his day in Court; and by virtue of the same rule, if a chattel interest was the subject of the mortgage, the executor or administrator was to be served with process.'
The Court in Biggerstaff v. Loveland say: “ Generally, ' when a suit is authorized by statute, to be commenced against £ the heirs, executors, or administrators of a deceased person, ' we should conclude that the suit must be brought against one ' or the other, acccording to the nature of the particular, cause £' of action. If it was one in which the' heirs were bound, or < had a peculiar interest, the suit should be brought against £ them; otherwise against the' executor or administrator. If, £ however, we were to adopt this principle in construction of £ this statute, no difficulty would be removed.”
The reason given is, that the act makes the judgment a debt of record, if the mortgaged premises are insufficient; so that the personal representatives, as well as the heirs, are affected by the proceedings which, by the express terms of the statute, may be commenced against either. It may well be. doubted whether this reasoning is consistent with the rule, that the right to a day in Court should be jealously preserved. But it is clear that the language of the Court affords no countenance to the proposition, that, in the absence of the provision referred to, the heir is deprived of his day in Court. On the contrary, the Court fully recognize his right, where the difficulty, supposed to be raised by the act of 1810, does not exist.
*767 It is said, however, that it was not the practice to give the owner his day in Court. This assertion is purely, gratuitous, and, if true, it would not affect the question; for, as decided by this Court, in Lessee of Grey v. Askew, 3 Ohio Rep. 479, “ where a practice was insisted on, it is not enough that the ‘ question passed unnoticed, it must have been decided; a con- ‘ struction must be given by the courts themselves.” The case just cited shows that it certainly was the practice, to some extent, to seize the lands of heirs without giving them their day day in Court. But this Court refused to sanction the practice.
As to the alledged practice, under the act of 1807, for the sheriff to execute a deed without the confirmation of the Court, there is nothing to support the assertion. The number of suits commenced after the passage of the act of 1807, on mortgages made before the year 1802, cannot have been numerous; and,, out of the whole of them, it is very unlikely that more than half a dozen were conducted without regard to the law in force when the law was executed. It is true that, in some of the cases, as in this, the plaintiffs, according to an error common at one time, may have preferred obtaining a general judgment and proceeding, under a general execution, against all the property of the decedent, and then, of course, the deed would be executed under the general execution law.
There are some additional objections to the title derived by the defendants to a portion of the property — the fractional sections which were levied upon and sold, under the judgment rendered against the administratrix, for $473.
The so called writ of sci. fa. was founded upon the deed of 1798, which did not pass any title. But it is said., not only might the heir be deprived of his freehold, by proceedings upon a mortgage, without being allowed an opportunity of defending himself; but, also, that the absolute owner might be divested without being allowed his day in Court, even when there was no mortgage in existence. I cannot for a moment assent to this proposition. The suggestion,' that the administratrix might have denied the alledged mortgage, has no force. If the owner *768 had been before the Court, and thus had an opportunity of traversing the allegation, she would have been bound by an adjudication of the Court that there was a mortgage, if such adjudication had been made.
There was no valid mortgage, and there was no valid writ of sci. fa., the writ produced being without a seal, and there is no such thing as presumption of a seal to process. Both of these are matters which the plaintiff never had an opportunity of controverting before the trial of the action. The defendants’ ancestor obtained possession under the compromise deed of 1815; the possession being retained by Mrs. Mercer and her daughter up to that time, notwithstanding the sheriff’s deed of 1811.
The mortgage title does not, in my opinion, form any defence to this action. The mortgage money has been fully satisfied; and, if it had not been, as the defendants are hot proved to be entitled to it, they would have no defence. They are not liable to be charged as mortgagees in possession for the rents and profits, because they hold adversely. It follows that they cannot set up the defence, that they are mortgagees in possession.
The heir of the mortgagee takes no title in the mortgaged premises. This Court has decided that a simple transfer of the mortgage debt leaves no interest in the mortgagee, because the mortgage lien is a mere incident of the debt. Upon the death of the mortgagee, his executor or administrator becomes legally entitled to the debt, and, consequently, to the mortgage lien. “ It would be absurd in principle and oppressive in practice for 1 the debt and mortgage to be separated and placed in different 1 and independent hands.” 5 Cowen’s Rep. 207.
The deed of release of all claims on the estate of John Mercer, executed in 1827, is conclusive. A deed of release is' always binding at law, unless obtained by fraud or duress. If executed under a mistaken supposition that some claims have been satisfied which have not been, the remedy is in equity.
But all the evidence, in the present case, shows that no debt remains unsatisfied. According to the case made on behalf of *769 defendants, credit was given, on the compromise of 1815, for only a part of the mortgage money. This was ,on account of the conveyance made to Jesse Hunt of part of the property belonging to the plaintiff. She was deprived of the use and profit thereof, during the life of her husband, by that conveyance. There was, then, some consideration for the credit given on the mortgage, and this consideration cannot be restored. Its adequacy certainly cannot be inquired into in this action. Chitty on Contracts, 31; Fowler v. Shearer, 7 Mass. Rep. 19.
The argument; that the amount credited in 1815 is now due, is untenable, even if we go behind the release, for the life estate held and enjoyed by Jesse Hunt cannot be treated as of no value. The balance of the mortgage money was settled by a conveyance of property in the year 1827, and, thereupon, the deed of release of all claims was executed and delivered.
As to what has been said .about Jesse Hunt’s conduct in his dealings with the widow Mercer, I am unable to say whether he did agree to purchase the property'at the sheriff’s sale, as trustee, as sworn to by her, nor can I say whether the terms of the compromise were violated by Jesse Hunt, and the mortgage money paid twice; with these matters we have nothing to do. I should not have alluded to them had they not been made to assume considerable prominence in this case.
In my opinion, the decision in this case has violated a great constitutional principle, and has sanctioned the errors of post-judicial proceedings at the expense of fundamental right, and exhibits the sad spectacle of a person being deprived of her estate without ever having had a day in court.