Opinion of the court, by
Judge Sherman:
This case depends upon the title of the defendants to the premises in controversy, and that title upon the sufficiency of certain proceedings had upon a mortgage from G-. W. Allen, the ancestor of the lessor of the plaintiff, and from whom both parties derive title, to J. Langdon, dated September 18, 1805. At the February term, 1809, of the courtof common pleas for the county of Franklin, a judgment was obtained upon sci. fa. upon this mortgage, and execution sued out againát the mortgaged premises, a sale made thereof by the sheriff, who conveyed to the purchaser, L. Starling, by deed, dated July 11, 1809. There was no appraisement of the value of the mortgaged premises recited in the sheriff’s deed, or produced *177 upon the trial. There were a number of questions made by the-counsel, on the motion for a new trial, but the court have deemed it necessary to consider but two. Did the statutes in force at the-time these proceedings took place require an appraisement of the mortgaged premises; and if so, was such appraisement essential to the validity of the sale ?
The act for the recovery of money, secured by mortgage, of February 12, 1805, which was in force at the time the mortgage from G. W. Allen to Langdon was executed, and at the time al>. the proceedings thereon were had, provided, that upon final judgment being entered upon the mortgage, “ a writ of levari facias might issue, by virtue of which the mortgaged premises should be taken in execution, and disposed of in the same manner and under the same regulations, that lands or tenements are, or may be, by law, disposed of *for the satisfaction of judgments.” It is contended that this provision of' the law requires the sale of mortgaged premises to be conducted in the same manner, and under the same regulations prescribed by law, for the sale of lands in satisfaction of judgments in force at the time of executing the mortgage, or suing out the writ of scire facias. But this is a construction which neither the words of the law nor the intent of the legislature will warrant. The expression, “the mortgaged premises shall be disposed of,” as lands “ are or may be by law,” refers to-the time of the disposition by sale of such mortgaged premises. It is the disposition of the mortgaged lands under the writ of levari facias, that the legislature is providing for, and they direct the-manner of that disposition to conform to the laws that may happen to be in force for the sale of lands in satisfaction of judgments, at the time of such disposition.
It has been repeatedly held, that the law in force at the time of a sale of lands upon execution must control the manner of proceeding, by the officer in conducting such sale, and not the law in force at the time of the rendition of the judgment, except those cases specially provided for by statute. It has been the uniform policy of our mortgage laws to require all lands mortgaged since June 1, 1805, to be sold in the manner prescribed by law, for the disposition of real estate by execution, in satisfaction of judgmen s in force at the time of such sale. Mortgages executed prior to June 1,1805, are, by another statutory jwovision, to be proceeded on, and the money secured thereby recovered in the manner directed by th© *178 -laws in force at the time of the execution of such mortgage. But in 1805, the legislature, for all mortgages thereafter executed, instead of specifically directing the manner of proceeding to sell the mortgaged premises, after judgment upon scire facias, providetherefor by adopting as the course of proceeding the laws “that are or may be” in-force, for the disposition of lands in satisfaction of judgments; and this provision has since remained unchanged. The object was to prescribe a uniform mode of selling lands upon execution, whether the lands were mortgaged, levied on by the officer, or delivered up by the judgment debtor, and was intended as well for the safety of the officer as the benefit of both judgment debtor and creditor. *The execution law subjected the officer to a very severe penalty for any neglect or omission of duty, and prescribed a summary and rigorous manner of enforcing that penalty, upon the supposition that his duty was so plainly marked out, he could not in any case with ordinary care mistake it. The levari facias does not recite the date of the mortgage, and the officer has no means of ascertaining that fact, but by the examination of the record in court (a duty never imposed on him), yet, in all cases, he must ascertain it in order to execute the writ, if the sale must, as is contended by the defendant, be conducted under the execution law in force at the time of giving the mortgage. The true construe, tion of the mortgage act of 1805 is that the sale of the mortgaged premises, by virtue of the levari facias, shall be conducted in the same manner, and under the same regulations required by the law for the sale of lands upon judgments, in force at the time of such sale; and not under the law in force at the time the mortgage was executed, or any proceedings had thereon anterior to the sale; and it is understood that the practice in most parts of the state has conformed to this construction.
The judgment and execution law, in force at the time the sale of these mortgaged premises was made by the sheriff, under the levari facias, required that all real estate levied on by an execution, should be appraised and not sold for less than two-thirds, or one-half of such .appraised value, as it might happen to be improved or unimproved.
The next, and most material question is, whether a sale of lands upon execution, is valid without an appraisement. This is the first time this question has been brought before the whole court for argument and determination, and had it not been for the decision in the ■case of lessee of Patrick v. Ousterout, 1 Ohio 27, I should have felt *179 no difficulty in coming to the conclusion, that the want of an appraisement of real estate would not render the sale by the sheriff void, so as to vest no title in the purchaser. It having been held in that ease by two of the judges of this court, that the appraisement constitutes an essential part of the proceedings in the sale of lands under an execution, our respect for that opinion, as well as the importance of the question, has induced us to examine with great care the point, and a majority of the *court have found themselves under the necessity of saying that in their opinion the sheriff’s deed will vest in the purchaser, not being a party to the judgment, a good and valid title to the lands levied on by, and sold under the execution, although no appraisement of the premises had been made.
The general principle by which the validity of sales upon execution is to be tested, is laid down by the Supreme Court of the United States, in Wheaton v. Sexton, 4 Wheat. 503. It is there said the purchaser depends upon the judgment, the levy, and the deed ; all other questions are between the parties to the judgment and the marshal. Whether the marshal sells before or after the return, whether he makes a correct return, or no return at all to the writ, is immaterial to the purchaser provided, the writ was duly issued, and the levy made before the return. Substantially the same doctrine has been recognized in the courts of most of the states, when lands are sold upon execution to satisfy judgments. 2 Bibb, 402; 3 Bibb, 217; 8 Johns. 366; 16 Johns. 357 ; 2 Bin. 40.
It is the well-settled doetrine-of the English courts, that the irregularity of the sheriff’s proceedings, in sales, will not vitiate the right of the purchaser, provided he had an execution authorizing him to, and he did in fact levy and sell. The purchaser must look to see there is a judgment, upon which to found an execution j that an execution has been issued, and a levy made, but is not bound to inquire into the regularity of all the ministerial acts of the sheriff, before or after the sale.
It is certainly true that the legislature might make an appraisement of the land, essential to the validity of the sheriff’s deed, as they can impose any condition or restriction upon those alienations of estates that derive all their efficacy from statutory regulations. But as the legislature, when the}*- subjected real estate to be levied on and sold,in satisfaction of judgments, were acquainted with the principles of the common law, applicable to sales by sheriffs under execution, it must be presumed they intended those principles *180 to apply to the sale of lands, unless a different intent is clearly expressed or necessarily results from the provisions of the statute.
*In order to ascertain whether that intent has been manifested by the legislature, the court have not confined their attention to the act regulating-judgments and executions in force at the time this sale took place, but have examined all the subsequent statutes thereon, as they all, much as they differ in other particulars, contain the provision for the appraisement of lands, and direct that no sale thereof shall take place for less than a certain proportion of the appraised value. A clear expression of the intent of the legislature, that such appraisement was essential to the validity of the purchaser’s title, found in any one of the numerous acts made upon the same subject matter, would greatly assist in giving, if not entirely controlling the construction of the same provision in the other acts. This examination has shown, that from 1808 the provisions of the different acts regulating the appraisal, sale, and conveyance of land, by virtue of an execution, have been very uniform, especially considering the great number of acts the legislature have found it expedient to pass on the subject of judgments and executions.
It is admitted that the legislature have not in any of the judgment and execution laws declared, in so many words, a sale of lands by the sheriff under an execution void, if made without appraisement; but it is said, that by force of the proviso in the first section of the act of 1808, and contained in substance in all the subsequent execution acts, such appraisement is made a condition precedent to the sale, and essential to its validity. A majority of the court, however, after the most careful examination of the several statutes, are unable to give this construction to the proviso, as, in their opinion, it would have the effect to render it inconsistent with some, and entirely defeat other material provisions of the same statute. The act of February 22, 1808, amendatory to the act of 1805, regulating judgments and executions, provides “ that if execution be levied on lands, and the officer levying such execution shall call an inquest of five reputable freeholders, and the inquest shall on oath or affirmation return to said officer, under their hands and seals, an estimate of the real value of said estate, upon actual view of the premises,” that the officer shall forthwith deposit a copy of the appraisement with the clerk who issued the execution, and sell the same agreeably to the provis *181 ions of the *act of 1805; then follows the proviso in question: “ Provided, that no tract of land that has improvements thereon •shall be sold for less than two-thirds, nor any tract of land without improvements thereon, for less than one-half of the returned value by the inquest.” A statute should be so construed, that the several parts will not only accord with the general intent of the legislature, but also harmonize with each other; and a construction of a particular clause, that will destroy or render useless any other provision of the same statute, can not be correct. No word ever should be rejected, if the statute will admit of a rational and consistent construction without it. And in .order to arrive at a correct interpretation of the proviso in question, it will be necessary to consider its connection with all those provisions of the acts regulating judgments and executions, with which it has a direct and immediate relation. They all form part of the same system, and should be so construed that each distinót provision may have its proper effect, and the objects the legislature had in view in enacting the law be accomplished.
The construction contended for, by which a sale by the sheriff would be void, without appraisement, can not receive any aid from the circumstance that the clause of the statute relied on is in form of a proviso. A proviso is generally used in a statute to ■qualify, limit, or restrain the operation of general terms contained in a previous part of the section or act, and not to introduce a distinct and independent proposition. The section in which this proviso is found, is in all the statutes directory to the officer levying an execution on land. He shall call an inquest of five freeholders ; he shall return a copy of the appraisement to the clerk’s •office, “ and immediately advertise and sell such real estate;” then follows the proviso, “ that no tract of land shall sell for less ” etc. The natural office of the proviso here would seem to be to limit the general terms used in the direction to sell to cases where such sale could be effected for one-half, or two-thirds the appraised value, as the case might be. Whether this be the proper office of the proviso here or not, it certainly would have been entitled to more weight in the present question, had it been found in those .sections of the statute, declaring the effect of a sale of land, on execution by the sheriff, and the extent of the interest the purchaser acquired *by such sale, in a section, acknowledged to be directory to the sheriff of his duty.
*182 It is also worthy of observation that the ninth section of both acts of 1805 and 1810 forbid, in as positive terms, the sale of lands-without advertisement, as the proviso in question does without appraisement, the words being, “ and no lands shall be exposed to sale on any writ of execution, until public notice by advertisement shall have been given,” etc. It has never, I believe, been supposed that it was essentially necessary to sustain a title under a sheriff’s deed, to show that the sale of the land was advertised the length of time, and in the manner directed by the statute. This section has ever been considered as directory to the sheriff, and any failure or neglect of his to comply with the directions it contains, might subject him to a penalty or an action, at the suit of the party injured, but would not render his deed to a purchaser void. And every argument derived from the supposed positive enactment of the legislature, as well as of interest or policy, that can be urged for requiring the appraisement as essential to the validity of the title of a purchaser at the sheriff’s sale, applies with equal force for requiring the public notice of the time and place of sale directed by the statute. In case the sheriff neglects either of these directions, the creditor or debtor, or both, may be seriously injured, but they have their remedy against the sheriff; or by an application in proper time to the court, proceedings under the execution may be arrested. If the officer having the execution, and the purchaser combine together to defraud the parties to the judgment, the sale will be void upon other principles, and th©i officer subjected to a penalty.
If the appraisement, by five freeholders under oath, was intended by the legislature as essential to the validity of the sheriff’s deed, they would, it is presumed, have provided some mode of preserving the evidence of such appraisements, for the benefit of the purchaser. The only provision of the statute looking to such preservation, is that directing the sheriff, before he proceeds to sell, to return a copy of the appraisement to the office of the clerk of the court issuing the execution. There is no direction in any of our statutes to the clerk to record the copy, or place it on file1 among the papers in the cause, to note it on his execution docket, or make *any other disposition of it, or even to preserve it. It can scarcely be believed that the legislature intended by the-proviso in question, that the purchaser at sheriff’s sale should be bound to show an appraisement under oath, by five freeholders,. *183 whenever the legality of such sale was called in question, and yet make no provision for the preservation of the inquest, or the safekeeping of the copy delivered, to the clerk, or even for its admission in evidence, when it might happen to be preserved. The original inquest is left in the hands of the officer for his security; the copy is delivered to the clerk, not upon the return of the execution, but before the sale, that the creditor, debtor, and all persons desirous of purchasing, may ascertain the proceedings of the officer, and the appraised value of the lands, and regulate their conduct accordingly.
The legislature, in all the general acts regulating judgments and executions, have directed the officer selling land, to make to the purchaser a deed for the lands so sold; and have directed that the sheriff’s deed “ shall recite the writ or writs, and the judgment or judgments, or the substance thereof, by virtue whereof the said lands” were sold. The legislature, by directing this recital, evidenced their knowledge of the necessity of there being a judgment and execution to sustain the sheriff’s deed; and it was apparently their intention, that the deed should contain on its face a reference to those facts, upon which its validity must depend. If they had supposed that by the same act requiring these recitals, they had made the appraisement as essentia] to the purchaser’s title as a judgment, they would, it seems to me, have directed the officer making the deed also to recite such appraisement, especially, as they had not provided for the original being placed on record in any public office, or for the preservation and making evidence of a copy.
The legislature, in each of the several judgment and execution laws, have also declared the effect of a sheriff’s deed, without limiting it to those cases, where all the directions of the statute have been complied with. “ The sheriff, who, by such writ or writs of execution,, shall sell the lands, etc., so levied upon, shall make to the purchaser as good and sufficient a deed of conveyance for the lands, etc., so sold, as the person against whom such writ of execution was ^issued might have made for the same; and such deed shall vest in the purchaser as good and perfect an estate in the premises therein mentioned as was vested in the defendant, at or after the time the lands became liable to the satisfaction of said judgment.” The purchaser is to have as perfect an estate in the lands sold by the sheriff as the defendant had; provided, the sale had been made under an execution levied upon *184 said lands. The levy of an execution upon the lands, and a sale by the officer, are considered essential to the purchaser’s acquiring the same estate in the land that the judgment debtor had; and when they had taken place the sheriff’s deed was to vest in the purchaser as good a title as the defendant could have made at any time, at or after judgment. The legislature, in adopting and adhering to this provision, for it belongs to all our general judgment and execution laws, do not appear to have contemplated any , other essential requisite to the validity of a sheriff’s deed than a judgment, execution, levy, and sale, by the proper officer; for it can not be admitted that in declaring upon what a sheriff’s deed should be founded, and its effect, that they would wholly have omitted one, and only one requisite of an effectual and valid conveyance, or any'reference to it. If the legislature intended to place the appraisement, judgment, and levy upon the same footing, of being equally necessary to the purchaser’s title, that intent would have been manifested by some mention of, or reference to the appraisement, in those parts of the statute providing for the deed to the purchaser, and its effect upon the estate of the judgment debtor. The expression of the statute just quoted, would probably have been, “ that the officer, who by such writ of execution, shall sell the said lands so levied upon ” and appraised, “shall make to the purchasers,” etc. The fact that in a number of different parts of the statutes, where the levy and sale are provided for, and their effect declared, no mention is made of the appraisement, would be sufficient to show the legislature did not intend by the proviso in question, that the sale should be void without appraisement.
By section 21 of the judgment and execution law of 1810 (and there are corresponding enactments in all the subsequent execution laws), the sheriff, or other officer having an execution in his hands, “who shall neglect or ^refuse to soil any lands, etc., or shall neglect to call an inquest of five respectable freeholders, etc., shall be amerced in the amount of the debt, damages and costs, with ten per cent, thereon, to, and for the use of the plaintiff or defendant, as the.case may be;” and the same section further provides a summary mode of obtaining said amercement, by either party; and that execution issue, in the name, and for the use of the plaintiff or defendant, as the case may be against the body, goods, lands, etc., of such officer; saving to both parties, the *185 right of proceeding by attachment against the officer, at their election.
There is no provision for amercing the sheriff for selling lands without judgment or execution, or levy; nor for conveying to a pretended purchaser, when, in fact, there had been no sale, for then ■would all be inoperative and void, and would, in a legal sense, work injury to no one. But it is for omitting to do, what by law he was bound to do; or by proceeding in a manner different from that prescribed by the statute, and which, nevertheless, would bo operative, as between the parties, that he is to be amerced.
He is to be amerced, “for neglecting to call an inquest,” in the amount of the debt, and ten per cent, upon the motion of the judgment debtor, whose lands have been sold without valuation. The sale is absolutely void, the title still remaining in the judgment debtor, and the purchaser taking nothing by his deed, if the effect contended for by thó plaintiff, is to be given to the proviso ; and yet, for this void act, working no injury to the defendant, but a benefit, so far as the amount paid by the purchaser diminishes his debt', he is to amerce the sheriff in the full amount of that debt, and ten per cent, thereon. It would be doing injustice to the legislature, to suppose that they intended the sale of land upon execution, by a sheriff, without appraisement, to be absolutely void, when, at the Bame time, they subjected him for making such sale to so severe a penalty. If such sale be void, the parties would not be injured thereby. The judgment debtor would lose nothing, the creditor might be subjected to a short delay, but his lien upon the lands would still remain, and yet these parties, or one of them, can subject the sheriff to this penalty, for an act almost harmless as to them, while the purchaser who has paid his money, and acquired *no valid title, and the only one materially injured, is without remedy or redress. Courts of law are not warranted in giving such a construction to the acts of a legislature, as must necessarily work injustice and be fraught with injurious consequences, unless the intent of the legislature that they shall be so understood, is manifest and clear beyond any rational doubt. The legislature probably intended the provision requiring an appraisement of real estate, and that it should not be sold for less than a certain proportion of the appraised value, as a majority of the court understand it, as directory to the officer having the execution, making it his duty to cause such appraisement, and forbidding him under a pen *186 alty from selling for less than the statutory price, but as between the purchaser and all others, leaving the validity of the sale to depend upon the same principle, and to be tested in the same manner it would, had not the statute required such appraisement.
It is certain that the legislature intended that all lands upon which an execution had been levied, should be fairly appraised at their just value; and they made it the duty of the officer having such execution, to cause such appraisement to be made; and for a neglect of this or any other duty, he was liable to the party injured thereby. They did not expect that lands would be sold upon execution for less than one-half or two-thirds of their appraised value, and they made it the interest of the officer who had a control over the sale, to see that it was in all things conducted according to the direction of the statute. The failure or neglect in advertising, or causing an inquest to be held of the value of the land, subjected him to a penalty to the amount of the judgment, with ten, and at one time twenty-five per cent, addition, to be imposed and collected in a summary manner, as well as his liability to an action, at the suit of the person injured.
The legislature believed that they had insured the faithful discharge of the duties imposed upon sheriffs, as they must be always influenced thereto by the most powerful of motives, that of self interest; and that neither policy nor justice required that'the innocent purchuser should be subjected to loss by the neglect of a public officer, over whose acts he had no control.
*The policy of appraising lands levied on by execution in satisfaction of judgments, and requiring them to sell for a certain proportion of the appraised value, was early adopted, and since constantly adhered to in Ohio. It has been found, as it was expected, beneficial on the whole to both creditor and debtor. To creditor, by preventing the debtor, in the name of a friend, from purchasing a largo estate for a trifle, leaving the debt unsatisfied, and removing many of the inducements the debtor had to cover up his estate, and prevent it from a forced sale for what it would bring ; to debtor, by preventing the sacrifice, in a time of a general scarcity of money, of his real estate, for a sum greatly below its just value. In many instances it has retarded the collection of debts, especially where the sum- was large, and thereby produced inconvenience, and sometimes embarrassment to the creditor; but •its effect has been to eventually secure a more certain, though *187 tardy payment of debts than could, in a country like ours, with limited pecuniary means, have been expected, if lands were sold upon execution for whatever sum might happen to be bid. This policy of protecting real estates from being sacrificed at sheriff’s sales has been sufficiently protected, without subjecting an innocent purchaser to certain and irremediable loss when the officer has neglected his duty.
But the judgment debtor is not compelled to rely alone upon the liability of the officer for his remedy, ample and expeditious as that is made by statute. If the sheriff should attempt to sell without appraisement or advertisement, a judge’s order might easily be obtained to stay all proceedings on the execution until the sitting of the court, when the sheriff might be punished for attempting to abuse the process of the court, if such should be the fact, and his proceedings set aside for irregularity. And in cases where the sale had taken place, but the money not paid over to the creditor, or a deed delivered to the purchaser, the court might interfere and set aside the proceedings on the execution as irregular, as they could then place the parties in the same situation they were in before the irregularity took place. There are many ways under our law and practice in which, upon proper application, a court could effectually interfere to prevent a sale of lands not appraised from being ^perfected by the execution and delivery of the sheriff’s deed. Protection against wrong from the hands of ministerial officers, as well as redress for injuries sustained, is abundantly furnished by law, and it must be for the neglect of the judgment.debtor, if his lands are ever sold without the requisitions of the law being strictly complied with. But when the judgment debtor, who ought to be vigilant if he will enjoy his privileges and protect his rights, stands by and suffers the sheriff or .other officer to sell his lands after judgment, ex-eeutiqn, and levy, receive the purchase money, and execute and deliver a deed of conveyance to the purchaser, such sale is not vitiated, or the deed void, for want of an appraisement, or on account of a defective appraisement. The judgment debtor’s remedy is against the officer for neglect of duty ; and to him he must look for redress for the injury he has sustained.
If the view, which a majority of the court have taken of the judgment and execution acts, prior to the law of 1824, be incorrect, and the true con&L. action of those acts should require an ap *188 praisement of lands, as essential to the validity of a title, derived ■under a sale by the sheriff, the mischief resulting from such in ■ correct decisions must be small, and there is no danger of its inducing carelessness or inattention on the part of sheriffs. By a provision of the judgment and execution law of 1824, the court to which an execution shall be returned, upon which lands have been sold, shall carefully examine the proceedings of the officer, and if they are satisfied that the sale has been conducted in all respects according to the provisions of the act, they shall cause an entry thereof to be made upon their journal, with an order to the officer to make to the purchaser a deed. The sheriff may retain the purchase money until the proceedings have been approved by the ■court, and this court have decided the deed of the sheriff inadmissible in evidence without it be made in pursuance of an order of the court.
These provisions of the statute are admirably adapted to protect the rights and interests of the judgment creditor and debtor, as well as the purchaser at sheriff’s sale; and so long as courts ■carefully examine into the regularity of the sheriff’s proceedings upon the levy, appraisement, advertisement, and sale, there is no danger of injury being sustained *by any of the parties interested. It will probably produce, ere long, the desirable effect of making titles, derived under sheriff’s deeds, equal in public estimation to those derived either from individuals or the United ■States.