(Superior Court of Cincinnati.)

DAVID S. OLIVER, v. AUGUST H. BODE, BENJ. F. EHRMANN, CHAS. A. MILLER AND THOMAS C. MINOR, constituting the Board of Elections of Cincinnati, Hamilton County, Ohio, and the Deputy State Supervisors of said County.

---

1.  In elections in cities of the first grade of the first class, each political party is entitled to one challenger and one inspector to be present in each polling place, from the opening of the polls until the conclusion of the conut.

2.  In the country precincts of counties containing such a city, each political party is entitled to two challengers and one inspector in each polling place, the former to be present from the opening of the poll to the close of the receipt of the votes, and the latter to remain throughout the entire election and count.

3.  Where the law provides that a Board of Elections may issue instructions to election officers, which it is their duty to obey, and such board issues instructions which are illegal and injuriously affect the right of a candidate at an election, such candidate is entitled to an amendatory injunction restraining said board from continuing in force such instructions.

---

SMITH, J.

The plaintiff is a citizen, tax-payer and qualified elector of the city of Cincinnati, County of Hamilton, and State of Ohio, and is a duly nominated candidate for member of congress of the United States, for the second congressional district of this state at the election to be held November 3, 1896, which is a public election for state, county, and congressional officers, and for officers of the First Judicial District and the First Judicial Circuit.

The defendants constitute the Board of Elections of the city of Cincinnati and County of Hamilton, and by virtue of their offices are the deputy state supervisors for this county.

It is provided in Sec. 2926(c) Rev. Stat. as amended 87 v. 360 that:

"The board may from time to time make and issue all such rules, regulations and instructions *not inconsistent with law* as they shall deem necessary for governing or guiding their secretary and his deputy or assistants, and the registrars of electors and judges and clerks of elections, or other persons under their control, in the proper discharge    of their respective offices and duties."

In the exercise of the power thus conferred upon the defendant board, it has undertaken to make, print, issue and circulate certain books of instructions to the judges and clerks of said election, and it is admitted by the board that it intends to enforce these instructions upon election day unless restrained by the action of the courts.

The plaintiff claims that certain of these instructions in the language of the statute authorizing the board to give instructions, are "inconsistent with law," transcending the power of the board, and are therefore illegal and void; and that unless the board is restrained from continuing to issue such instructions and to enforce the same, he will suffer irreparable damage.

He therefore asks for a perpetual injunction restraining the board from the further issuing of such instructions, and from the enforcement of the same, and for such other and further order as may be necessary to restore him to the position he occupied with reference to the election before the instructions were issued.

The instructions complained of relate to the right of the Democratic party, of which the plaintiff is a member, and of which he is a candidate as before stated, to designate certain persons who shall be permitted to be present in the polling room on election day and act as challengers and witnesses or inspectors.

The allegations of the petition upon this point are as follows:

"The said executive committee of the Democratic party has designated two electors in each polling precinct of said ward of said city of Cincinnati included in the second congressional district, to attend said election on said day in said precinct, and to be present in the polling place from the opening of the polls until the close of the count of the ballots, in the interest of said Democratic party, and especially in the interest of this plaintiff as the candidate of said Democratic party; one of said electors being designated for the purpose of challenging electors, and the other of said electors being designated for the purpose of witnessing and inspecting the reception of the ballots, and the counting thereof. That the Democratic party precinct men in each of the polling places of said congressional district outside of said city of Cincinnati in the county of Hamilton, have each designated three electors in such precinct to be present at the polling place from the opening of

the polls until the close of the count of the ballots in the interest of said party, and especially in the interest of this plaintiff as the said party's candidate, two of whom are for the purpose of challenging electors, and the other for witnessing the voting and the count."

The petition further alleges that it is the intention of the defendants, acting in their capacity of Election Boards and Deputy State Supervisors of Elections, by the promulgation of its books or pamphlets of instructions to deprive this plaintiff of the right to have such challengers and witnesses present in the polling places on said election day.

The contentions of the board, and the instructions sent out by it on this question, may be summarized as follows. As to the precincts of the city, it denies the right of any political party to have a challenger in the polling place at any time during the day, but admits the right of such party to have a witness or inspector of the count present from the time the count begins until its close. As to the precincts in Hamilton county outside of the city, and popularly known as the country precincts, it concedes the right of any political party to have one challenger present in the polling place during the receiving of the votes, but not after the count has commenced, and also concedes the same right to have a witness or inspector as in the city precincts, viz: only during the time of the count.

It thus appears that there are wide and serious differences of opinion bewteen these parties touching the right to have challengers and witnesses or inspectors present in the polling places.

As our election laws touching these questions are entirely statutory, the first question presented in this case is one of statutory construction, and as in many instances it is impossible to properly construe these laws unless there is constantly borne in mind certain fundamental canons of construction with reference to repeals by implication I think it necessary at the outset to refer briefly to such fundamental principles.

Without seeking for further authority, I take the decisions of two cases cited in argument at the bar as clear and forcible expressions of these principles.

In Lessee of Allen v. Parish, 3 Ohio 193, it is declared that:

"A statute should be so construed that the several parts will not only accord with the general intent of the legislature, but also harmonize with each other, and a construction of a particular clause that will destroy or render useless any other provision of the same statute, cannot be correct. No word ever should be rejected if the statute will admit of a rational and consistent construction without it."

And in The State of Ohio ex rel. Olds v. Comrs. of Franklin County, 20 Ohio St. 424, it is held that:

"The rules for the construction of statutes in cases of this kind have been announced frequently by the court, viz: That the doctrine of statutory repeals by implication is not favored, and that such repeals will not be declared unless they are necessarily implied. And that statutes in pari materia should be so construed as to give effect to all their provisions, and if they can be construed so as to stand well together, there is no repeal by implication."

Bearing in mind these principles, I proceed to examine the various statutes bearing upon this question.

First, as to the city precincts: The earliest legislation upon this subject now upon our statute books, was passed in May, 1886, as a part of the registration law for the city of Cincinnati, and is known as Sec. 2926n, Rev. Stat. That section is as follows: (the italics being my own for the purpose of making prominent certain parts of the section.) Sec. 2926n.

"On Monday, the day preceding the November election in every year, the registrars, as judges of election, and the other two judges of election in each precinct, shall meet at the polling place appointed for holding the election therein at seven o'clock in the evening punctually, and then and there organize as a board by electing one of their number, by ballot, as chairman. If they fail so to elect a chairman within ten minutes, they shall immediately choose a chairman drawing lots. They shall at this meeting make all necessary arrangements for securing the ballot-boxes and the proper accomodations for themselves and the clerks of elections in receiving and counting ballots at the ensuing election, *and also, if requested, for the witnesses and challengers designated by each political party to be admitted within the polling rooms as follows, namely: At every election the executive or principal committee of each political party presenting one or more candidates for suffrage, may, by writing, certified by its chairman and secretary, and presented to the judges of election at or before this meeting. designate not more than three electors of such city as witnesses, and one other elector as a challenger, to attend at such election in behalf of such party. It shall be the duty of the judges of election in each and every ward or election precinct to admit the witnesses and challengers so accredited, into the polling room with themselves and the clerks at the ensuing election, and to place them so near to themselves and the clerks, that they can fully and conveniently watch every proceeding of the judges and clerks from the time of opening the polls until the counting, certifying and signing of the final return of such election.* Before the opening of the polls the ballot boxes shall be opened, if requested by either of them, so that the inside and the locks and keys may be inspected by them. No ballot box, nor any ballot when taken from it for counting, shall be removed or

screened from the constant sight of such witnesses or challengers until the counting has been closed and the certificate of the final returns completed and signed by the judges. The challengers so designated shall be so placed that they can fully see and meet each and every person offering a ballot to the judges or either of them. And at such meeting, on the evening of the day preceding an election, any elector may appear and challenge the vote of any person named in the register of such precinct, and the word "challenged" shall immediately be entered by the judges opposite the name of such person on both of the duplicate lists of electors, and if he shall offer to vote at any election, the judges shall, upon such challenge, examine him under oath as to his qualifications as an elector in such precinct."

This section has never been expressly amended or repealed, and unless by implication repealed in whole or in part, sustains the entire contention of the plaintiff with reference to challengers and inspector in the city precincts.

The only act on the same subject matter subsequently passed is the act of April 18, 1892, 89 v. 432, consisting of thirty-nine sections, and popularly known as the Australian Ballot Law. We must find therefore in this law an implied repeal of the provisions of section 2926n upon this subject or the construction of plaintiff must be upheld as sound.

The first section clearly shows that the legislature by the enactment of the Ballot Law did not intend to repeal all other legislation on the subject of elections, for it declares:

"That hereafter elections of all public officers excepting school directors of subdistricts and joint sub-districts, and special school districts, holding elections on the second Monday of April, and all officers of original surveyed townships in this state, shall be conducted according to the Provision of this act, and *existing laws not inconsistent therewith.*"

It is true that since the original passage of this section there have been two immaterial amendments, extending the exceptions to "special school districts holding elections on the second Monday of April, and all officers of original surveyed townships, 90 v. 135, 268. But the part of the section important in the question at bar has always remained the same.

The two sections of the act relied upon in the contention that there has been an implied repeal, are sections 20 and 23. Section 20 is as follows:

"*Section 20. Two challengers may be appointed by the precinct committeeman of each political party having candidates to be voted for at such election, who shall be admitted to the polling place for the purpose of challenging electors in such precincts where the voters are not registered,* and they may keep tally of the electors voting: the challengers shall serve without

compensation from the county, city, village or township, and shall take the following oath, to be administered by one of the judges of election:

"You do solemnly swear (or affirm) that you will support the constitution of the United States and of this state: that you will faithfully and impartially discharge the duties as official challenger assigned by law; that you will not cause any delay to persons offering to vote further than is necessary to procure satisfactory information of the qualification of such persons as electors and that you will not disclose or communicate to any person how any elector has voted at such election."

"Any voter may be challenged by any challenger, judge or clerk of the election, and, if challenged, shall establish his right to vote as now provided by law. Any elector of the precinct may notify the judges of election, in writing, that he challenges the right of any person or persons to vote, giving the reasons, and such person or persons shall be deemed challenged as above."

The part of this section which is said to work a repeal of section 2926n upon this subject is the first part, which provides that there shall be two challengers in each precinct where the voters are not registered. But from this legislation, which merely extends to country precincts the right to have challengers, is it a necessary implication that the city precincts are to be deprived of that right expressly given by section 2926n? Cannot the two provisions harmonize? Indeed, would not the law be inharmonious without both of them? What is there about this clause in the latter statute which requires a construction which will destroy and render useless the provisions in section 2926n with reference to city precincts? I confess my absolute inability to see any reason for such a construction. And taking the section by itself and reading it in connection with Sec. 2926n, as we are compelled to do not only by the canons of construction but by the express declaration of Sec. 1 of the act of which Sec. 20 is a part, it is clearly the intention of the law to provide challengers in country precincts, and to leave unimpaired the right to one challenger in the city precincts.

But it is contended that Sec. 23, either by reason of its own provisions, or when read in connection with those of Sec. 20, necessarily works a repeal of Sec. 2926n. Let us see. Sec. 23 is as follows:

"Section 23. The county executive committee of each party having a ticket to be voted at an election may designate a suitable person to be present as inspector and witness and inspect the counting of the votes in each precinct, and who shall be admitted to said voting place, and who shall be entitled to a copy of the certificates provided for in this act, but no other person except the election officers shall be admitted to said polling place before or after the count begins. Immediately upon the close of the polls, the number of electors entered and

shown on the poll books as having voted, shall be first certified therein and signed by the board of judges and clerks, and before any other or further proceedings the president or chairman of the board shall make proclamation in a loud voice outside of the polling room, stating the number of voters so shown and certified on the poll books. Thereupon, the judges shall, in the presence of the clerks and the inspectors above provided for, destroy the ballots remaining unvoted."

It will be observed that the language of this section is so broad that it must necessarily apply to both city and country precincts, and inasmuch as it provides for only one witness or inspector, whereas section 2926n provided for three such witnesses or inspectors, it is necessarily a repeal by implication of Sec. 2926n as to the number of witnesses or inspectors who are entitled to be present in the city precincts.

But no reference is made in the section to challengers, by name, at least, and no repeal by implication as to the provisions of Sec. 2926n on this subject can be said to have taken place, unless it can be found from other indirect references in the section on that subject.

It is contended, however, that the phrase "but no other person (than the inspector) except the election officers shall be admitted to said polling place before or after the count begins" necessarily excludes all challengers because they are not election "officers."

The meaning to be given to the word "officers" when used in a constitution or statute is not always uniform. It depends upon the circumstances under which it is used, the language of the constitution or statute with which it is connected, and the general intent to be accomplished by its use.

Considering the entire scheme of the state for holding elections, it seems to me that the word "election officers" as used in Sec 23, includes the challengers.

The act in question is an act providing for the conducting of all public elections. The challengers are part of the election machinery provided by law for the holding of "public elections." They must be designated in the manner provided by law; they must present their credentials to be present in the polling places. In the case of the country precincts they must take an oath before they enter upon the discharge of their duties, and the very language of the oath prescribed by statute impliedly, if not expressly, recognizes them as officers, because it compels them to declare that they will "impartiall discharge the duties as *official* challengers assigned by law."

Furthermore, if the challengers in the country precincts are not officers within the meaning of Sec. 23, and entitled to be present in the polling places, then section 23 is a repeal of section 20 of the same law, although both were passed at the same time. Because Sec. 20 expressly provides for challengers, and declares that they shall be admitted in the polling places.

That the legislature intended the one section to repeal the other section of the same act is a proposition which it seems to me must be unsound, and as it is only upon this assumption that it can be held that the challenger is not an officer within the meaning of Sec. 23, it necessarily follows that the right of the challengers to enter the polling place as provided in Sec. 2926n, is unaffected by Sec. 23.

It is further contended by defendants that Sec. 23 impliedly repeals Sec. 2926n as to the period of time in which the inspectors may be in the polling places, by limiting it to to the time beginning with the count and continuing it to its close, and excluding the time beginning with the opening of the polls and continuing to the beginning of the count.

It is beyond dispute that by the provisions of Sec. 2926n the witnesses or inspectors are entitled to be present from the opening of the polls until the close of the count.

Where in Sec. 23, do we find that right abridged? This section declares that the "suitable person" provided for in Sec. 23 is to be present as inspector and witness, that is, in two capacities, and it then proceeds to specify what it is that he is to inspect, viz: the count. It does not specify what he is to witness, because such specification is unnecessary. He is to witness everything that takes place in the room. It is important that there should be an honest count, and the inspection is intended as an assistance in securing it. But it is equally important that all other proceedings should be properly and honestly carried on, and the presence of the witness is intended to serve that purpose.

Furthermore, the declaration in the statute that no other person than the witness and inspector and the election officers shall be admitted to the polling place "before or after the count begins," impliedly assumes that the witness and inspector is present from the beginning to the end as is provided in Sec. 2926n.

It follows from the foregoing examination of the statutes that in my opinion the demand of the Democratic party for one inspector and challenger in each precinct of the city is sustained by law, and that such persons are entitled to be present from the opening of the polls until the conclusion of the count.

As to the country precincts:—We have seen from the foregoing examination of the statutes that by section 20 of the Ballot Act, passed April 18, 1892, (89 v. 444,) it is expressly provided that two challengers may be appointed by the precinct committeeman of each political party in precincts where the voters are not registered, and unless this provision is repealed either expressly or impliedly, it determines the question as to the right of plaintiff to have challengers in

the country precincts, and the number of such challengers.

The defendants cite two provisions of law which it is contended have such effect.

The first is Sec. 1 of the law passed on the same day as the Ballot Law, viz: April 18, 1892, entitled "An act enlarging the duties of Boards of Election of certain cities It reads as follows:

"Sec. 1. In any county having within its territory a city of the first class, the election precincts of the county not included within the city, shall be held and deemed to be election precincts of the city for the purpose of conducting and supervising elections therein, and the board of elections heretofore established in such city shall have direction of elections in such precincts and throughout such county; and all the provisions, duties, penalties and requirements contained in Sec. 2926 Rev. Stat., and supplemental sections as heretofore amended shall apply and and be in full force as to all elections held in such county, as well as such city, except as herein specified; and the members, secretary, deputy secretary, clerks and assistants of such board shall be electors of the county and not of the city merely."

And the other provision of law relied upon is the first part of Sec. 37 of the Ballot Law which declares that:

lot "In counties containing cities of the first class the election precincts of the county outside of the city, shall be held and deemed to be election precincts of the city for the purpose of conducting elections under this act, and the Board of Elections heretofore provided for such cities by Sec. 2926 Rev. Stat. shall in their respective counties, perform the duties imposed upon the deputy state supervisors as by this act."

So far as section 32 is concerned, I am satisfied that the intention of the legislature by the language used was simply to bring the country precincts within the jurisdiction of the city board of elections, and that it was not intended to deprive those precincts of any rights which by reason of there being no registration in the precincts they were entitled to. To hold otherwise would be to hold that one section, 37, repealed by implication another section, 20, of the same act; a construction not to be tolerated unless conclusively forced upon the mind by the plain language of the act. But what of section 1 of the "Act enlarging the duties of Boards of Election of certain cities," and especially of that part which declares that all the provisions, duties, penalties and requirements contained in Sec. 2926 of the Rev. Stat. and supplemental sections as heretofore amended, shall apply and be in full force as to all elections held in the country as well as the city? Does this mean that only one challenger shall be allowed in the country precincts as in the city, or is Sec. 20 of the Ballot Law applicable, which expressly provides for two challengers in such precincts?

One embarrassment in which the defendants necessarily find themselves in an argu-

ment that it destroys the effect of Sec. 20, and that only one challenger is allowed as in the city, is that the argument admits that the city precincts are each entitled to one challenger, and this position is directly contrary to their position when the law with reference to the city precincts was under review, for in that case it was contended that the city precincts were not entitled to any challenger.

But we are not concerned with the consistency of the arguments at the bar; the sole inquiry is as to the legislative intent.

If for the purpose of discussion, we may assume that by virtue of Sec. 1 of this law standing alone, the country precincts would be entitled to only one challenger, as in the city precincts, the question still remains—what disposition is to be made of Sec. 20 of the Ballot Law which expressly declares that in such precincts the parties are entitled to two challengers.

It appears that both laws were passed upon the same day, viz: April 18, 1892; and ordinarily the presumption is that a law takes effect from the commencement of the day of its passage. But this presumption is not conclusive, and where two statutes containing repugnant provisions are passed upon the same day, evidence may be heard as to which one was passed first, and the one last signed by the Governor is a repeal of the one previously signed. Arrowsmith v. Hamering, 39 Ohio St. 577. In the case at bar, no evidence has been submitted upon this question, but in the annual volume of the laws published by the state in which these laws appear, the Ballot Law is printed after the other law, and this item of evidence seems to me sufficient, in the absence of any other showing, that the provisions of the Ballot Law, if in any way inconsistent upon this point with the earlier law, should prevail.

But aside from this presumption, we have previously seen that the Ballot Law by Sec. 23 has modified Sec. 2926 and the supplemental sections, so that only one inspector and witness is allowed in city precincts instead of three as provided in Sec. 2926n. And if Sec. 23 modifies these sections so that they must give way before it, why does not the same rule apply to Sec. 20, which is part of the same act?

Is there not also great force in the reason of the law in allowing challengers? If one challenger is regarded as necessary in precincts where the votes are registered and the difficulty of discovering frauds are very much lessened, ought there not to be more than one challenger in precincts where there is no registration? And is it not fairly to be presumed that the legislature recognizing these evils furnished an appropriate remedy?

Furthermore, and above all, may we not invoke the principles of construction which oppose implied repeals, and declare that finding it at least doubtful whether Sec. 20 is affected by the "act enlarging the duties of boards of election in certain cities," it

shall not be overthrown by doubtful implication.

It therefore follows in my opinion that the contention of the Democratic committee that it is entitled to two challengers in the country precincts, should be upheld.

I have previously expressed my opinion as to the period of time during which the witness or inspector may remain in the pollling place. It is not necessary for me to say anything further therefore on that subject.

As to the period of time within which the challengers in the country precincts may remain, I am disposed to the opinion that as their duty ceases with the close of the polls, there is no necessity for their remaining longer, and in the absence of any declaration in the statute that they shall remain longer, I think the proper construction of the law is that they must leave with the closing of the polls and .the beginning of the count.

I recognize the fact that by this construction, the city challengers are given greater rights than those in the country by being allowed to remain until the count is ended. But so the law declares. And whether the omission to make the same declaration with respect to the country precincts was intentional or accidental, is immaterial. The statute has omitted to make the declaration, and the courts cannot legislate.

It follows therefore, that as to the country precincts, the party with which plaintiff is connected is entitled to two challengers and one inspector in each precinct, the former to remain from the opening of the polls to the close of the receipt of the votes, and the latter to remain throughout the entire election and count.

The answer ·of the defendant, sets up a prior adjudication as to this question, in a case entitled Hill v. The Board of Elections, in the Common Pleas Court of Hamilton county, deccided last year by one of the judges of that court. The parties, however, being different, the decision in that case is not conclusive upon the parties to this case. However, it appears that that case was an action in mandamus against the board to compel the issuing of certain instructions, and the court held that such a remedy would not be an appropriate proceeding. The main questions in the case were not decided.

What as to the remedy in this case? Has the plaintiff waited so long before asserting his rights that he has no standing in a court of equity, or if his delay does not prejudice his standing, has a court of equity under the particular circumstances of this case no power to afford him relief?

It appears from the evidence that the questions at the bar have been the subject of controversy between the Democratic committee and the Board of Elections for the past four or five years, and the contemplated action of the board each year has been the subject of remonstrance and protest upon the part of said committee. It further

appears that on Saturday morning after· counsel for plaintiff had made arrange-- ments with me to present on Monday morning an application for a restraining order against the defendants, in compliance with my request he left a notice to that effect, at the board of elections with the clerk of. the board, and that before 12 o'clock of that day, two members of the board were made aware that such a notice had been· left with the board and by four o'clock all the members had been so informed. On Friday evening the instructions to the county had gone out, nevertheless· a large number of the books or pamphlets of instruction were sent out Saturday afternoon, and nearly, if not indeed. all, of the remainder were sent out Monday morning before the opening of court, and. after all the members of the board were aware of the contemplated action. It is fair· to say, in justice to the board, that the· sending out of the instructions was by the clerk, without the knowledge of the board.

It seems to me that under these and all· of the other circumstances in this case, the defendants cannot be heard to say that the· plaintiff comes too late because that which. he seeks to prevent has been done, but that the plaintiff nevertheless is entitled to a, mandatory injunction ordering the board to· restrain from continuing to enforce the order· by revoking the illegal orders previously issued.

That the writ of injunction issues against. public officers transcending their powers is. now well settled.

"The preventive jurisdiction of equity extends to the acts of public officers, and will be exercised in behalf of private citizens who sustain such injury at the hands of those claiming to act for the public as is· not susceptible of reparation in the ordinary course of proceedings at law. And it may be stated as a general rule, that when public officers, under color and claim of right, are proceeding to impair either public or· private rights, or when their proceedings· will result in serious injury to private citizens without corresponding benefit to the public, or when the aid of equity is necessary to prevent a multiplicity of suits, an injunction will be allowed.

"In applications for relief by injunction against the acts of public officers, the determining point is ordinarily whether they are acting within the scope of their authority, or whether they are transcending that authority. And while equity will not interfere while such officers are acting within the authority conferred upon them by law to determine whether their action is good or bad, yet if they assume powers over property which do not belong to them, and in fringe upon or violate the rights of citizens under pretense of such assumed authority, equity has jurisdiction to interfere for the protection of the citizen" ·

High on Injunctions, Secs. 1308 and 1309.

That the 'only remedy in a case of this character is by writ of injunction to pre-·

vent the illegal act, is self-evident. To send the plaintiff. to the courts of law, would be to send him into endless litigation, which would be of doubtful if any real, benefit to him.

But if the illegal act has taken place, how can the court afford a remedy? The answer is by a mandatory injunction which will compel the restitution of plaintiff to the position he occupied before the commission of the illeagl act.

In the case of Stanford v. Lyon. 37 New Jersey Equity, 113, the court compelled by mandatory injunction, the removal of a building which the defendant had constructed in the yard of the plaintiff. In the course of the decision the court said:

"The courts, in deciding whether a mandatory injunction shall issue or not, always proceed with caution, and will, as a general rule, only allow the writ to go in cases where it appears to be the only appropriate and effectual remedy for the grievance. But in a case like that under consideration, where the complainant's legal right is entirely clear, and where the injury of which he complains is not only a constantly recurring grievance, but is an actual, permanent appropriation by the defendant of the complainant's property, so that the court, under its own established rules, is left no choice but is bound to take jurisdiction, there, on pronouncing decree, a mandatory injunction goes, as of course, as the necessary and appropriate process for the enforcement of the decree. Johnson v. Hyde, 6 Stew. Eq. 632, 640. No other process will meet the justice of this case, or give the complainant an effectual remedy. To dismiss him from this court and send him to the law courts, would be, in effect, condemning him to endless litigation—for the only redress they can give for a continuing injury is by successive suits—or compelling him to submit to the confiscation of his rights. There is nothing in the conduct of the defendants which should induce the court to stint the complainant in his relief, or to deny to him the full benefit of the usual remedy for his wrong. They had full notice of his rights before they began the construction of their building. He attempted to prevent its construction by suit; they persisted in completing the building with the threat of that suit hanging over them, and accepted the hazard of doing so while their right was in contest and undertemined. If the remedy which must be applied to right their wrong seems harsh, it should be remembered that the remedy is such as their rash obstinacy has made necessary.

"The complainant is entitled to a mandatory injunction, commanding the defendants to remove and abate so much and such parts of their building as prevents and precludes him from exercising his rights in the yard. He will also be entitled to his costs of this suit."

The principle upon which the courts proceed in this class of cases is also shown by an illustration given in an article in 18 Central Law Journal, 323, where it is said:

"Restraining a person from doing a particular thing does not always prevent the commission of an injury, for there are many instances in which it is necessary to compel the performance of a certain act in order to prevent the threatened injury. In illustration of this statement, the opening of a sluiceway may be cited. After the sluiceway is opened, an injunction to prevent its being opened is useless and absurd; but one to close it will render a great benefit to the lands which the escaping water is flooding. In such an instance the escaping water works a continuing damage, and is a threatening menace of danger.

"In the supposed case a court of equity has full power to prevent the threatened damage, by compelling the wrong-doer to close the sluice way. Although the court has no power to issue an order or mandatory injunction commanding the wrong-doer, in direct terms, to close the sluice way, yet, it accomplishes the purpose by commanding him to cease from allowing the water to flow. The writ is framed in an indirect form, and compels the defendant to restore things to their former condition, thus virtually directing him "to perform the act."

Other authorities to the same effect might be cited but the citation is unnecessary.

Applying the principle thus declared—As we find the instructions of the board were illegal and beyond its power, are continuing to operate, and will work irreparable damage to the plaintiff, he is entitled to a mandatory injunction against the election board, restraining them from continuing the injurious instructions which injuriously and irreparably affect his rights, and a preventive order of injunction restraining the board from the issuing of further instructions of a similar character.

H. D. Peck, for Plaintiff.

Fred Hertenstein, Corporation Counsel, for Defendants.

October 29th, 1896.